## PICKLES *v.* AGLAR.

PATENTS; INTERFERENCES; PRIORITY OF INVENTION; EVIDENCE.

Where in an interference case, it appears that the junior applicant, a draftsman, made the application drawings for his rival and wrote upon them the latter's name as the inventor, and made no claim at the time that he was the inventor, and there is no direct testimony in support of the junior applicant's claim, except his own, priority of invention will be awarded the senior applicant.

No. 99. Patent Appeals. Submitted November 16, 1898. Decided December 9, 1898.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. F. W. Ritter, Jr.,* for the appellant.

*Mr. Hervey S. Knight* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

In this appeal from the decision of the Commissioner of Patents in an interference proceeding, the invention in con-

troversy between the parties is described and defined as follows:

"1. A brake-beam comprising a truss having a strut composed of sections swiveled together, the outer end of said strut being provided with two grooves at right angles to each other, substantially as described.

"2. In a brake-beam, a beam made of sheet-steel with gore-shaped openings extending along its inner side almost to its center where the edges of the sheet abut, and a collar fitting over the beam at its closed part, substantially as described.

"3. A brake-beam comprising a hollow tube having gore-shaped slots extending from its ends to near its middle, substantially as described."

The invention, as is apparent, has reference to an improvement for brakes for cars; and it is conceded that both contestants claim precisely the same device. The question for determination is, which of the two was the first and original inventor; and this question is to be determined from the testimony and from the rules of law applicable thereto; and yet the testimony on both sides is remarkably unsatisfactory.

The appellee, Francis B. Aglar, was the first to file his application in the Patent Office, which he did on May 27, 1895, thereby gaining the right of constructive reduction to practice on that day. There was no actual reduction to practice by either party before application filed, although there seems to have been such actual reduction to practice by both afterward. The appellant, Charles K. Pickles, filed his application about two months after his rival, on July 23, 1895; and thereupon an interference was declared between them.

The parties filed their preliminary statements. The appellee, Aglar, in his statement alleged that he had conceived the invention about November, 1894; that he made sketches of it and explained it to others about the same time; that

on May 21, 1895, he employed a draftsman in St. Louis, where both of the parties are residents, to make sketches for him to be filed with his application for a patent; that he then and there explained the invention to the draftsman, who, as the testimony subsequently showed, furnished the desired sketches, and was no other than the contestant and present appellant, Pickles; and that, about October, 1895, he caused the actual manufacture to be commenced of articles embodying the invention.

The appellant Pickles, alleged in his preliminary statement that he had conceived the invention about the middle of December, 1893, which was about one year before the conception by Aglar; that he made drawings of the invention about December 15, 1893; that he explained his invention to others about May 15, 1895; and that he caused a full-sized brake-beam embodying the invention to be made and completed in July or August of 1895.

Testimony was taken, the main testimony being that of the parties themselves, for the other witnesses called by them throw little or no light on the substantial questions of controversy; and upon the testimony all three of the tribunals of the Patent Office awarded priority of invention to the appellee, or, rather, found that he was the true and only inventor. The defeated contestant now brings the case here on appeal.

After a careful perusal of the record, we fail to find any reason for coming to a different conclusion from that reached by the Commissioner in this case. The appellee claims to have had the invention in November, 1894. That he had it in May of 1895, when he went to the appellant for the purpose of having the latter prepare for him the drawings to accompany his specification to the Patent Office, is very clear; for not otherwise could the appellant have prepared the desired drawings for him than from his statement of what he wanted. It may be that he did not at first have it in its entirety as it was afterwards evolved. It may be that

alterations and improvements were made in consequence of suggestions by the appellant during their several interviews while the drawings were in course of preparation. Undoubtedly, the sketch produced by the appellee, as having been made by him in November of 1894, is exceedingly crude, as first sketches of inventions very often are; and it might be doubted whether it showed the full invention as subsequently illustrated in the drawings. But into the consideration of the development of the appellee's conception during the period of the interviews to which we have referred, it is unnecessary to enter; for if part only of the invention belonged 'to the appellee, and part was the conception of the appellant, there is no attempt on the part of anyone to discriminate between the two. The contest is over the invention as an entirety.

All the tribunals of the Patent Office have based their decision substantially on the course of conduct pursued in the premises by the appellant; and we do not think that they have erred in this. There is little or no direct testimony on either side beyond that of the parties themselves; and this is remarkably weak and manifestly infirm in various particulars. But the action of the appellant, at a time when his action was most significant, speaks louder than words, and is the strongest testimony for the appellee. The appellant, as stated, was employed by the appellee to prepare the drawings which were to accompany the specification to be sent by the latter to the Patent Office. He was perfectly well aware of the purpose for which these drawings were intended. He was himself an inventor, and had taken out some fifteen or twenty patents for different devices, among them two for devices of precisely similar character to that involved in this interference. He had several interviews with the appellee, as well as with the latter's attorney ; and he never once intimated to the appellee in any manner that he himself (the appellant) already had this invention. On the contrary, when he delivered the drawings,

as. he finally did, to the appellee's attorney, he had written upon them with his own hand the name of the appellee as the inventor, it being usual to put the inventor's name on such drawings, but usual also that this should be done by the attorney, and not by the draftsman. It is true he testifies that when he finally took the completed drawings to the appellee's attorney, the latter asked him the question, "Who is the inventor of this?"—a most improbable inquiry under the circumstances—and that his answer was, "that no part of this was Aglar's." But he admits that he did not tell the attorney whose invention it was, and the whole statement is flatly contradicted by the attorney as a witness on behalf of the appellee. It remains, therefore, wholly without proof that the appellant ever claimed to any one at this time that he was the inventor of the device in question. And yet at this time, if ever, he should have spoken. He did not speak, and he gives no excuse for his silence. The Board of Examiners-in-Chief was justified in quoting against his claim what the Supreme Court of the United States, in the case of *Atlantic Works* v. *Brady*, 107 U. S. 192, said with reference to a somewhat similar situation: "It may be true, but we can not give it effect against what he himself did and did not do without disregarding the ordinary laws that govern human conduct." See, also, the *Telephone Cases*, 126 U. S. 1.

Almost equally remarkable and significant was the conduct of the appellant when subsequently the appellee took him to task for filing the application which led to the present interference. His excuse was, not that he was in fact himself the inventor, but that he had made his application in order to prevent the appellee's father-in-law, against whom he seems to have borne a grudge, and whom he supposed to be interested in this invention, from deriving any benefit from it. When he was informed by the appellee that the person referred to had no interest in the invention, the appellant then expressed his desire to withdraw his ap-

plication from the Patent Office, and he corresponded forthwith for that purpose with those to whom he had assigned his claim; but these persons declined to accede to his request, and the interference was permitted to proceed.

It may possibly be that the conduct of the appellant does not constitute an estoppel to prevent him from setting up a claim to the invention in controversy. Counsel for the appellant has argued very ably that there can be no such thing as an estoppel in this case; that the statute is mandatory to the effect that only the first inventor should have the patent, and that the appellee was not misled to his detriment or deprived of any right by the action of the appellant. However this may be, the fact remains that the appellant was silent when he should have spoken, and that he certified to the Patent Office and the world, by his endorsement upon the drawings that the appellee was the inventor of the device which they were made to illustrate; and this is proof sufficient to our minds that he did not then have the invention which he subsequently claimed. It is possible to account for his course of conduct without impeaching his credibility. It is easy enough, under the circumstances, to assume that he was mistaken when it subsequently occurred to him to set up his claim. There may have been enough in the interviews between him and the appellee during the period of the preparation of the drawings to induce him to exaggerate the value of his own suggestions and ultimately to regard himself as the inventor.

We think that the decision of the Commissioner was right, and that it should be affirmed; and it is accordingly hereby *affirmed.*

*The clerk of this court will certify this opinion and the proceedings in this court to the Commissioner, according to law.*